**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CAUSE NO. 2:10-CR-55 |
| CHRISTOPHER L. SPEARS[1], | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion to Revoke Detention Order 18 U.S.C. § 3145(b), filed by defendant, Christopher L. Spears, on May 24, 2010 (DE #24). For the reasons set forth below, defendant's request for a de novo hearing is **DENIED**, and the motion to revoke the detention order is also **DENIED**. This Court **ORDERS** that Christopher L. Spears remain **HELD WITHOUT BOND**.

BACKGROUND

A criminal complaint was filed on March 17, 2010, alleging that defendant Christopher L. Spears ("Spears") knowingly produced

---

[1] The complaint and indictment charge defendant in the name of Christopher L. Spears, and the case is captioned as such; however, the Court notes that the pretrial services report indicates that Louis Spear, the defendant's father, stated that his son's name is Spear, not Spears. The defendant's attorney has referred to his client as both Spear and Spears in the various motions filed. Because the defendant is referred to as "Spears" in the instant motion, the complaint, and the indictment, the Court will do the same.

false identification documents in violation of 18 U.S.C. § 1028(a). (DE #1.) An arrest warrant was issued, and Spears was arrested on March 18, 2010. (DE #3.) On March 24, 2010, a hearing was held before Magistrate Judge Paul R. Cherry ("Judge Cherry") to determine the issues of probable cause and detention. (DE #8.) Spears appeared in person with his attorney, Ashwin Cattamanchi ("Attorney Cattamanchi"), and present for the Government was Assistant United States Attorney Thomas Ratcliffe ("AUSA Ratcliffe"). At that hearing, both the Government and Spears had full opportunity to produce and present evidence.

The Government presented detailed evidence by way of proffer beginning with the affidavit of State Trooper Scott Krueger ("Trooper Krueger")[2] which is attached in support of the criminal complaint. (DE #1, pp. 2-7.) The Government proceeded to describe the course of the criminal investigation and tendered numerous exhibits including, but not limited to, a false Indiana firearms license, false earnings statements, false checks, false social security cards, and several Indiana drivers licenses.[3] (DE #8; Tr. of Det. Hr'g, pp. 8-26.) Following the presentation of the exhibits, relevant portions of Spears' March 2, 2010, post-Miranda statement were summarized on the record by AUSA Ratcliffe. (Tr. of

---

[2] Trooper Krueger is a Detective with the Indiana State Police Department, currently assigned to work as a Task Force Agent with the FBI, as part of the Gang Response Investigative Team ("GRIT"). (DE #1, pp. 1-2.)

[3] The Court has reviewed the exhibit list (DE #8) as well as the exhibits themselves, which were provided to the Court by the Government on June 2, 2010.

Det. Hr'g, pp. 26-30.) AUSA Ratcliffe then proceeded to summarize the results of a separate ATF investigation based on a reported interview conducted by State Trooper Mary Hewitt ("Trooper Hewitt").[4] (Tr. of Det. Hr'g, pp. 30-32.) Finally, the Government's factual proffer was concluded with the summarization of Trooper Krueger's statements regarding Spears' continued illegal activity following his post-interview release. (Tr. of Det. Hr'g, pp. 32-35.) Attorney Cattamanchi then called Trooper Krueger to the stand. (Tr. of Det. Hr'g, pp. 35-39.) AUSA Ratcliffe followed by cross-examining Trooper Krueger. (Tr. of Det. Hr'g, pp. 39-41.) Following the cross-examination, Judge Cherry asked Attorney Cattamanchi whether he wished to present any other evidence, and Attorney Cattamanchi indicated that he did not. (Tr. of Det. Hr'g, p. 41.)

The Government then proceeded to argue that Spears presents a danger to the community because: (1) he was producing fraudulent and convincing Indiana firearms carry permits; (2) he has prior arrests for domestic battery; and (3) he admits to cocaine drug use. (Tr. of Det. Hr'g, pp. 42-44.) The Government also argued that Spears is a flight risk because: (1) previous warrants had to be issued for his failure to appear in court; (2) Spears demonstrated an inability or an unwillingness to abide by the rules

---

[4] Trooper Hewitt is an Indiana State Trooper and task force agent with the ATF. (Tr. of Det. Hr'g, p. 30.)

3

when he continued to make fraudulent documents after he was interviewed by law enforcement agents; and (3) Spears has the ability and skills as a forger to assume any different identity that he wants and is now aware of the substantial penalties he is facing in this case. (Tr. of Det. Hr'g, pp. 44-46.) The Government argued that there are no combination of conditions that can assure the safety of the community because there is nothing to stop Spears, along with the help of an accomplice named Tony, from creating further fraudulent documents for customers out of his home. (Tr. of Det. Hr'g, p. 46.) Attorney Cattamanchi responded by pointing out that there is no evidence of dangerousness because Spears has not had gun charges in the past, there is no evidence of any gun possession by Spears, and that a document crime is not a basis for finding that he is a violent person. (Tr. of Det. Hr'g, p. 47.) He also argued that Spears is a lifelong resident of the region with intimate ties to the community, that there is no history of Spears creating false documents for himself, and that failing to appear for small claims matters in Chicago does not provide a basis for finding that Spears is a flight risk. (Tr. of Det. Hr'g, p. 48.) The Government replied by stating that the pretrial services report indicates that Spears may have used different aliases, dates of birth, and Social Security numbers in the past and that a person who helps a convicted felon obtain a gun poses a danger to the community. (Tr. of Det. Hr'g, p. 49.)

At the conclusion of the hearing, Judge Cherry found sufficient probable cause to support the criminal complaint and also ordered that Spears be detained pending trial. (Tr. of Det. Hr'g, p. 50.) Judge Cherry issued a written order of detention on that same day. (DE #9.) In that order, Judge Cherry found that there was both a serious risk that the defendant would not appear and that there was a serious risk that the defendant would endanger the safety of another person or the community. (*Id*. at 2.) The reasons provided by Judge Cherry for detention were specified as follows:

> I find that the credible testimony and information submitted at the hearing establishes by a preponderance of the evidence that the defendant poses a risk of non-appearance because
>
> 1) Of the nature and circumstances of the offenses charged;
>
> 2) The weight of the evidence against the defendant – he gave law enforcement officers a detailed inculpatory post-Miranda statement;
>
> 3) After being picked up and questioned by law enforcement officers at length and admitting his involvement in the charged illegal activity, and after law enforcement seizure from him of numerous falsified documents, and after law enforcement search of his residence (pursuant to a Search Warrant), and after law enforcement seizure of his desk top computer, soon after his release (after questioning), within seven (7) days later the defendant was observed again engaging in the

fraudulent production of falsified documents;

4) The defendant has a history of substance abuse including recent use of crack cocaine;

5) The defendant failed to appear at Small Claims Court hearings in 2007 and again in 2008;

6) It is believed by law enforcement officers that the defendant has in the past used alias dates of birth and alias social security numbers.

I find that the credible testimony and information submitted at the hearing establishes by clear and convincing evidence that the defendant presents a danger to the community because

1) Of the nature and circumstances of the offenses charged;

2) The weight of the evidence against the defendant – he gave law enforcement officers a detailed inculpatory post-Miranda statement;

3) After being picked up and questioned by law enforcement officers at length and admitting his involvement in the charged illegal activity, and after law enforcement seizure from him of numerous falsified documents, and after law enforcement search of his residence (pursuant to a Search Warrant), and after law enforcement seizure of his desk top computer, soon after his release (after questioning), within seven (7) days later the defendant was observed again engaging in the fraudulent production of falsified documents;

4) The defendant has a history of substance abuse including recent use of crack cocaine;

> 5) It is believed by law enforcement officers that the defendant has in the past used alias dates of birth and alias social security numbers;
>
> 6) The defendant has a history of past criminal activity (including a charge for Domestic Battery).

(*Id.*) Judge Cherry concluded that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community." (*Id.* at 3.)

An indictment was issued on April 7, 2010, charging Spears with seven counts including aiding and abetting fraud during an attempted firearms purchase, aggravated identity theft, producing false identification documents, possessing five or more false identification documents with unlawful intent, possessing an implement designed to make a forged security, altering a social security card, and wire fraud all in violation of 18 U.S.C. § 2, § 513(b), § 922(a)(6), § 1028(a)(1), § 1028(a)(3), § 1028A, § 1343, and 42 U.S.C. § 408(a)(7)(C). (DE #11.) Individual penalties for these crimes range from a fine to a term of imprisonment of fifteen years. On April 15, 2010, Spears was arraigned before Magistrate Cherry. (DE #14.)

On May 5, 2010, Spears filed a Motion to Reopen Detention Hearing Under 18 U.S.C. § 3142(f)(2). (DE #15.) In that motion he argues that he has new information that has a "material bearing on

issues related to detention." (*Id*. at 2.) The "new information" consists of an affidavit of Carrie Spear, the mother of Spears, which states that she is "in agreement with Mr. Spear being released to [her] custody under home detention with electronic monitoring at [her] home" and will "assure the Court Mr. Spear will appear . . . when required and that he will not pose a danger to the safety of any other person or the community." (DE #15-1, p. 1.) An affidavit from Louis Spear, the father of Spears, is also attached to the motion indicating that he agrees to the home detention and will report any violations to the court. (*Id*. at 3.) After Judge Cherry requested further clarification on the motion, he issued an order reaffirming his May 6, 2010, order (DE #16) denying without prejudice the motion to reopen the detention hearing and found that, even if the detention hearing was reopened based on the affidavits provided, the court would not vacate or otherwise modify the March 24, 2010, order of detention. (DE #18.) On May 24, 2010, the instant Motion to Revoke Detention Order 18 U.S.C. § 3145(b) was filed by Spears. (DE #24.)

DISCUSSION

18 U.S.C. Section 3145(b) provides for district court review of a magistrate's release or detention order. Pursuant to this provision, the district court must conduct a *de novo* review and need not defer to the magistrate's findings. *United States v.*

8

*Levine*, 770 F. Supp. 460, 465 (N.D. Ind. 1991)(citations omitted); *United States v. Shaker*, 665 F. Supp. 698, 701 (N.D. Ind. 1987)(citations omitted).

The district court's review of a magistrate judge's detention order may be conducted either by reviewing the transcript, or by holding a new hearing. *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991). Although the district court has the *authority* to conduct a new hearing, it is not required. 18 U.S.C. Section 3142(f) provides that detention hearings "may be reopened, before or after a determination by the judicial officer . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

Here, while Spears has presented the affidavits of his father and mother as bases to reopen the detention hearing, the affidavits alone do not satisfy the threshold requirement to do so. As such, this Court exercises its discretion to conduct its *de novo* review by reviewing the complaint, the affidavit of Trooper Krueger, the pretrial services report, the transcript of the detention hearing, the physical evidence submitted during the detention hearing, the original detention order, the motions to re-open the detention hearing and to revoke the detention order, and the affidavits of

Carrie and Louis Spear without hearing additional evidence or argument.

Under the Bail Reform Act of 1984 (the "Act"), a defendant shall not be detained pre-trial unless a condition or combination of conditions will not reasonably assure (1) the defendant's appearance as required and (2) the safety of any other person and the community. 18 U.S.C. § 3142(e). In a case that involves a serious risk that the defendant will flee, a judicial officer must hold a hearing prior to ordering detention. 18 U.S.C. § 3142(f)(2)(A). In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the court must consider: (1) the nature and circumstances of the offense charged, including whether the offense involves a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

To justify detention based on the defendant's alleged dangerousness, the Government must establish "by clear and

convincing evidence that no condition or set of conditions will ensure the safety of the community." *U.S. v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985). On the other hand, to justify detention based on a risk of flight, it must be established by a preponderance of the evidence that no set of conditions will reasonably assure the defendant's appearance in court at the required times. *Id*. at 765. A finding of either a danger to the community or a flight risk is sufficient to detain a defendant awaiting trial; a court need not find both to detain a defendant under the Act. *U.S. v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985).

In this case, the Court agrees with and adopts Judge Cherry's original order of detention and finds there is a serious risk that Spears will not appear in court. It has been established by a preponderance of the evidence that Spears poses a risk of non appearance for several reasons. First, the inherent nature of the offenses charged demonstrate that the possibility of absconding is readily available to Spears. Spears is charged with various forms of fraud, identity theft, and production and possession of false identification documents. Based on the evidence presented, Spears has the ability to assume a different identity using the forgery skills he has been practicing over several years. He has created false identification documents including drivers licenses and Social Security cards. While Spears argues that he has no history of producing such false documents for his personal use, the

11

possibility to do so using his own skills remains.  The Court also acknowledges the pretrial services report indicates that a comprehensive report provided by Clear shows that Spears may have used different alias, dates of births, and social security numbers in the past.  In addition, Spears has been charged with possessing an implement designed to make a forged security.  Fraudulent checks purporting to be from Centier Bank were recovered from Spears' home; each check was made out to a different person and was worth over $500.00.  This demonstrates that Spears has the ability to generate funds in order to flee.  Combined, the nature and circumstances of the offenses charged show that Spears poses a serious risk of non-appearance.

Next, the weight of the evidence against Spears is strong. After GRIT agents organized a controlled purchase of a fraudulent document from Spears, pursuant to a warrant, they searched the home where he lived with his mother.  A variety of altered, forged or otherwise fraudulent documents were found in the home. Subsequently, Spears gave a detailed post-Miranda statement on March 2, 2010.  Among other things, Spears admitted to the agents that he had been producing false identification documents for about three years in return for cash payments totaling approximately $50,000.  Spears described the process he used to create false documents, and he indicated that a middleman was used to facilitate the transactions.  Spears also provided detailed information about

four fraudulent State of Indiana firearm permits that he produced. In addition to Spears' post-Miranda inculpatory statement, evidence of a separate ATF investigation involving Spears was also presented. In that case, an interview was conducted with a confidential witness who described how she had obtained a fraudulent firearm permit from an individual fitting Spears' description. Taken as a whole, the Government has substantial evidence to convict Spears of the crimes charged.

The history and characteristics of Spears also weigh in favor of detention. While Spears points out that he is a lifelong resident of the region and that he has intimate ties to the community, the Court notes that Spears has been living in his mother's home for the past three years and that he has not been employed since 2007 or 2008. Although he has three children, the eldest lives in Georgia with her mother, and the younger children reside with his ex-wife. Spears was divorced in 2010. Based on these facts, the Court does not find that Spears' ties to the community are especially strong. In addition, Spears has admitted to having a substance abuse problem including recent, daily cocaine use. Furthermore, Spears has a history of non-appearance in court. The pretrial services report shows that warrants were issued in 2007 and 2008 for his failure to appear in court for small claims causes. Although Spears argues that failure to appear for small claims matters in Chicago should not be the basis for detention

because those charges were less serious than the current federal charges, the Court finds the opposite reasoning true. If Spears has a history of non-appearance in matters of relatively little consequence, then, logically, the risk of non-appearance is exponentially greater for matters where the penalties upon conviction are severe.

Initially Spears argued that a $20,000 unsecured bond was appropriate in this case; he later supplemented his argument by providing the affidavits of his parents who agreed to assume supervision of Spears under home detention with electronic monitoring. Although the Court has no reason to doubt the good intentions of Mr. and Mrs. Spears, such assurances of home detention do not convince the Court that a condition or combination of conditions will reasonably assure his appearance in court or control his post-release actions. Based on the investigation conducted and the evidence provided, it is clear that Spears has the ability to continue producing illegal documents from the confines of his mother's home. Although the investigation showed that he generally printed his false documents on printers at the library, the Court agrees with the Government's assessment that home detention would not prevent him from utilizing a portable printer or any laptop to create additional documents for his personal use or the use of various customers. Most of the physical evidence, including a variety of forged or altered documents and

raw materials used in creating those documents, was found in his mother's home.  The Government has provided evidence that Spears has an accomplice named Tony; with the help of this accomplice, it is likely that Spears would be able to obtain the necessary materials to continue in his illegal activities.  In fact, the evidence establishes that Spears has already demonstrated an inability or an unwillingness to abide by any rules the Court might set forth.  Shortly after being questioned by law enforcement officers at length regarding the investigation and after his mother's home had been searched resulting in the seizure of his computer and a variety of documents, Spears was again observed engaging in the fraudulent production of documents.

Based on the foregoing and after considering all of the factors under 18 U.S.C. Section 3142(g), this Court finds, by a preponderance of the evidence, that Spears is a serious flight risk and that no condition or combination of conditions will reasonably assure the appearance of Spears as required.

Although the finding above is sufficient in and of itself to justify detention, the Court notes that there is also clear and convincing evidence that no condition or set of conditions will reasonably assure the safety of the community if Spears' detention is revoked.  Therefore the Court agrees with and adopts the grounds stated in Judge Cherry's original order of detention.  More specifically, in addition to all of the reasons previously listed,

the evidence shows that Spears presents a danger to the community based on his ability to produce convincingly realistic fraudulent Indiana firearms permits.  The Court accepts the Government's factual proffer that an Indiana firearms permit allows a person to enter a federal firearms licensee in the state of Indiana and, without a waiting period, buy a firearm and leave with it that same day.  In his post-Miranda statement, Spears provided specific information about four fraudulent state of Indiana firearms permits that he created over the course of several years.  In addition to Spears' own admissions, the Government established that the entire investigation was essentially launched because of the discovery of a fraudulent firearms permit in the possession of a subject named George Andrews.[5]  In a post-Miranda statement, Mr. Andrews indicated that he had purchased the false permit from Spears.  The Government also presented evidence, based on an interview of a confidential witness conducted by Trooper Hewitt in a separate investigation, that Spears advised at least one customer that, even though she was on probation, she could still enter a gun store and purchase a gun using a fraudulent firearms permit.  Spears argues that there is no evidence that he personally possessed a gun or had any violent gun charges in the past; however, providing fraudulent firearms permits to persons who are not otherwise allowed by law to

---

[5] George Andrews was arrested on February 9, 2010, for possession of marijuana with intent to distribute and possessing a handgun without a permit. (Tr. Of Det. Hr'g, pp. 9-10.)

16

possess or purchase firearms, creates a clear danger to the community.[6]

Based on these facts as well as the reasons listed in the preceding paragraphs, the Court finds, by clear and convincing evidence, that Spears presents a danger to the community and that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

CONCLUSION

For the reasons set forth above, defendant's request for a de novo hearing is **DENIED**, and the motion to revoke the detention order is also **DENIED** (DE #24). This Court **ORDERS** that Christopher L. Spears remain **HELD WITHOUT BOND**. Pursuant to 18 U.S.C. Section 3142(i), it is ordered that:

> A. Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.
>
> B. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; and

---

[6] The Court also acknowledges that Spears was arrested in the past for domestic violence, and this weighs in favor of detention. *See* 18 U.S.C. § 3142(g).

17

> C. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DATED: June 4, 2010**                              **/s/RUDY LOZANO, Judge**
                                                     **United States District Court**